IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:17-cv-00004-FL

| | |
|---|---|
| SAVE OUR SOUND OBX, INC., THOMAS ASCHMONEIT, RICHARD AYELLA, DAVID HADLEY, MARK HAINES, JER MEHTA, and GLENN STEVENS,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF TRANSPORTATION; FEDERAL HIGHWAY ADMINISTRATION; JOHN F. SULLIVAN, III, DIVISION ADMINISTRATOR, FEDERAL HIGHWAY ADMINISTRATION; and JAMES TROGDON, SECRETARY, NORTH CAROLINA DEPARTMENT OF TRANSPORTATION,<br><br>Defendants,<br><br>and<br><br>DEFENDERS OF WILDLIFE and NATIONAL WILDLIFE REFUGE ASSOCIATION,<br><br>Defendant-Intervenors. | **DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL DISMISSAL**<br>Fed R. Civ. Pro. 12(b)(1), 12(b)(6) |

Now come Defendant-Intervenors, Defenders of Wildlife and the National Wildlife Refuge Association ("the Conservation Groups") to reply in support of their motion for partial dismissal.

## I. Count I of Plaintiffs' Amended Complaint Should Be Dismissed to the Extent It Alleges Violations of Requirements that Do Not Apply to the Challenged NEPA Documents

Plaintiffs incorrectly claim that the Court cannot take judicial notice of the Federal Register and they improperly recite which agency decisions are before the Court. Despite Plaintiffs' attempts at misdirection, it remains clear that they are limited in this case to challenging only the sufficiency of the Environmental Assessments ("EA") issued for Phase IIb of the Bonner Bridge Project. All other National Environmental Policy Act ("NEPA") claims about earlier decisions are barred by the statute of limitations and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A) This Court Must Take Judicial Notice of the Statute of Limitations Printed in the Federal Register

Plaintiffs argue that the question of whether their claims are barred by the statute of limitations cannot be reached in a 12(b)(6) motion because the Federal Register Notice announcing the statute of limitations was not part of their complaint. Dkt. 55 at 10. This argument is a non-starter. It is well recognized that "[t]he contents of the Federal Register *shall be judicially noticed* . . . ." 44 U.S.C.A. § 1507 (emphasis added). *See, e.g.*, *Berg v. Cincinnati, Newport & Covington Ry. Co.*, 56 F. Supp. 842, 847 (E.D. Ky. 1944) ("It is proper that the court on this motion should take cognizance of the orders of those administrative agencies."); *Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166, 1179 (9th Cir. 2002) (Graber, J., dissenting) ("[f]ederal courts are required to take notice of matters in the Federal Register.").

There is nothing disputable or controversial in the Federal Register Notice. The notice requires no further factual development. Rather, the notice simply sets out the statute of limitations for claims related to the Environmental Impact Statement ("EIS") for the Bonner Bridge Project. Indeed, if this Court were to accept Plaintiffs' suggestion that courts are prohibited from taking notice of the Federal Register on a motion to dismiss, there would be no mechanism to **ever** dismiss a NEPA case for being outside the statute of limitations prior to summary judgment, no matter how belatedly a case was brought.

1

This Court must properly take notice of the Federal Register and discard any of Plaintiffs' claims that were not timely brought.

### B) Plaintiffs are Limited to Asserting Claims Regarding the Adequacy of the EA for Phase IIb, Not the Earlier EIS for the Entire Bonner Bridge Project

Plaintiffs are improperly attempting to expand the scope of review to which they are entitled. Rather than simply challenging the EA and associated final agency action that was prepared for the Phase IIb Rodanthe area bridge options, Plaintiffs appear to be attempting to reopen the entire EIS for the larger Bonner Bridge Project to renewed judicial review, despite the fact that the statute of limitations to challenge that decision-making process has long since passed.

Plaintiffs argue that "to the extent the 2008 FEIS forms the basis for the Jug-Handle Bridge decision, it is part of the administrative record and subject to review." Dkt 55 at 11. Plaintiffs are incorrect. While it is true that the EIS will form part of the administrative record, along with several thousand other documents, the only matter before the Court for decision in this case is the adequacy of the Phase IIb EA that was prepared for the Rodanthe area bridges. The Phase IIb decision is evaluated according to NEPA's standards for EAs, not the EIS standard that the Plaintiffs improperly attempt to impose on the Phase IIb decision that is before this Court.

Neither of the cases cited by Plaintiffs stands for the proposition that they may resurrect a challenge to an EIS when the statute of limitations has long passed. *Public Citizen v. Nuclear Regulatory Commission*, 901 F.2d 147, 151 (D.C. Cir. 1990), involved two decisions issued by the Nuclear Regulatory Commission outside of the NEPA context. The D.C. Circuit explained that a decision regarding whether to engage in rulemaking made in 1988 "reopened" and "reexamined" an earlier choice made in 1985 and made permanent what had previously been a temporary decision. *Id*.

That situation is inapposite to the one before the Court. The 2008 EIS for the Bonner Bridge Project was not a temporary decision, but rather the basis for a final agency action in the form of the 2010 Record of Decision for the entire project. The decision on the overall Bonner Bridge Project has not been "reopened." Rather, the final decision made in 2010—to proceed with the Bonner Bridge Replacement

2
Case 2:17-cv-00004-FL   Document 56   Filed 04/27/17   Page 3 of 12

and transportation management plan—remains entirely unchanged. And to the extent the earlier decision was "reexamined" in more detail for the Rodanthe area bridge options, the reexamination was done in the context of an EA. Any review of the reexamination must, as such, be limited to a review of whether the EA complied with the standards NEPA sets out for EAs. These standards, as the Conservation Groups explained in their opening brief, are distinct and less demanding than those that govern the preparation of an EIS. *See* Dkt 46 at 9-10 (comparing 40 C.F.R. §§ 1508.9 and 1502.9(c)(1) with § 1502.14(a)).

*Montana Wilderness Association v. Fry*, 310 F. Supp. 2d 1127, 1143 (D. Mont. 2004), also cited by Plaintiffs, only serves to underscore this point. The Court in that case set out in detail the different regulations governing an EIS and EA, and then applied the standards governing an EA to the review of that document. This court should do the same. While the 2008 EIS undoubtedly is part of the administrative record, the adequacy of that document and the evaluations and decisions made on the overall Bonner Bridge Project cannot be reconsidered at this late date by this Court. Likewise, standards used to determine the adequacy of an EIS are inapplicable to Plaintiffs' challenge of the EA.

Plaintiffs had an opportunity to challenge the EIS for the full Bonner Bridge Project in 2010, when the Record of Decision was published and the statute of limitations was open. They did not do so. Plaintiffs are now limited to challenging only the adequacy of the EA for the Rodanthe project under the regulations set out under law for the preparation of EAs. 40 C.F.R. § 1508.9.

## II. Count II of Plaintiffs' Complaint Should be Dismissed Because Plaintiffs do not Have Standing

### A) Plaintiffs' Claims Should be Dismissed Pursuant to 12(b)(6)

Plaintiffs have failed to adequately plead a concrete and particularized injury sufficient to demonstrate standing for their Section 4(f) claims. Plaintiffs' Amended Complaint alleges that Save Our Sound's members and each of the individual plaintiffs will be harmed by construction of the Sound Bridge because the bridge will "decrease members' property values and diminish members' use and enjoyment of their property and surrounding areas, including the Refuge." Am. Compl. ¶¶ 11, 12–17. The Amended Complaint also alleges that Plaintiffs, "own property near, and make regular use and

3

enjoyment of, the public lands, wetlands, and waters in and around the Pea Island National Wildlife Refuge." *Id*. These vague, conclusory allegations are insufficient to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In their response brief, Plaintiffs argue that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). *Lujan*, however, when read in accord with *Twombly* and *Iqbal*, requires more than a bare-bones and conclusory assertion of harm such as that contained in the Amended Complaint. "Because *Lujan* mandates that standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof,' it follows that the *Twombly–Iqbal* facial plausibility requirement for pleading a claim is incorporated into the standard for pleading subject matter jurisdiction." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). Accordingly, the Fourth Circuit has held that while general factual allegations of injury resulting from the defendant's conduct may suffice, conclusory legal assertions and boilerplate language do not.[1] "[W]e need not accept factual allegations that constitute nothing more than . . . 'naked assertions.' Moreover, we are 'powerless to create [our] own jurisdiction by embellishing otherwise deficient allegations of standing.'" *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 181–82 (4th Cir. 2013) (citations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990)).

By contrast, courts have held that plaintiffs adequately plead standing when they "identify *how* Plaintiff's individual members use and enjoy the [area] at issue, *how* their use and enjoyment is harmed by concerns about violations of environmental laws, and that the injury is traceable to Defendants." *California Sportfishing Prot. All. v. All Star Auto Wrecking, Inc.*, 860 F. Supp. 2d 1144, 1151 (E.D. Cal. 2012) (emphasis added). Here, Plaintiffs' Amended Complaint is devoid of this required factual enhancement, instead claiming that members of Save Our Sound and the individual plaintiffs use the Pea

---

[1] Moreover, in other contexts courts have found that boilerplate allegations that a defendant's actions will interfere with a plaintiff's "use and enjoyment" of an area, without further factual support, are insufficient to survive a motion to dismiss. *See, e.g., Andrews v. United States*, 108 Fed. Cl. 150, 160 (2012); *Mourad v. Marathon Petroleum Co. LP*, 654 F. App'x 792, 801 (6th Cir.), *cert. denied*, 137 S. Ct. 571 (2016).

4

Island National Wildlife Refuge ("Refuge") and that the Sound Bridge will diminish that use, but providing no allegations of *how* plaintiffs use the Refuge and *how* the Sound Bridge will diminish their use. *See* Am. Compl. ¶¶ 11, 12–17. Plaintiffs now attempt to avoid this shortcoming by citing to the declaration of plaintiff Mark Haines. *See* Response Brief at 15 (citing Mr. Haines' claimed use of the Refuge). Defendant-Intervenors' 12(b)(6) motion, however, challenges the sufficiency of the allegations in Plaintiffs' Amended Complaint, and Plaintiffs cannot rely upon extrinsic evidence to defeat Defendant-Intervenors' motion. *See California Sportfishing Prot. All. v. All Star Auto Wrecking, Inc.*, 860 F. Supp. 2d 1144, 1150–51 (E.D. Cal. 2012) (citing *Coalition for a Sustainable Delta v. City of Stockton*, 2009 WL 6697824, *2 (E.D.Cal. Aug. 21, 2009)).

Plaintiffs have also failed to establish that any injury they allege in their Amended Complaint "falls within the 'zone of interests' sought to be protected" by Section 4(f). *Lujan v. National Wildlife Federation,* 497 U.S. 871, 883 (1990). The zone of interests test "is a distinct and independent condition of standing. . . . The fact that a standing requirement is prudential does not mean that its application is discretionary." *Leaf Tobacco Exporters Ass'n, Inc. v. Block*, 749 F.2d 1106, 1112 (4th Cir. 1984). While the purpose of NEPA is to inform decision-making by public agencies prior to undertaking major federal actions significantly affecting the quality of the human environment, the purpose of Section 4(f) is far more specific and substantive: to prevent transportation projects from using certain limited types of protected parklands and historic properties.

Here, the Amended Complaint does not contain a single allegation of harm to the Refuge, which demonstrates that Plaintiffs' claims do not fall within the zone of interests protected by Section 4(f). The closest the Amended Complaint comes to identifying any impact on the Refuge is a conclusory reference to the Sound Bridge's "constructive and actual use" of the Refuge. Am. Compl. ¶ 76. But this phrase is merely a legal formulation, unsupported by any factual allegation of how the Bridge would harm the Refuge. Plaintiffs' failure to allege any harm to the Refuge is understandable, given that the Bridge will result in a net addition of over sixteen acres of restored Refuge habitat. Phase IIb ROD at 18, 23.

5

The Amended Complaint does identify other types of harm allegedly resulting from the Sound Bridge, stating that it "would disrupt kiteboarding and other recreational activities in Pamlico Sound, thereby reducing the property values and rental and business income streams in the area. . . . [and] foreseeably contribut[ing] to a reduction in local tax revenue . . . ." Am. Compl at ¶ 67. However, none of these alleged effects on Plaintiffs' interests has any connection to the Refuge or the Congressional purpose of Section 4(f): preserving public parkland and historic properties. 49 U.S.C. § 303; 23 U.S.C. § 138.

Meanwhile, Plaintiffs seek to shoehorn their well-documented interest in Pamlico Sound into the zone of interests protected by Section 4(f). But Pamlico Sound is not part of the only Section 4(f) property at issue in this litigation, the Pea Island National Wildlife Refuge. Plaintiffs now concede that Pamlico Sound is not part of the Refuge. D.E. 20, at 20. That should be the end of the matter.

Instead, Plaintiffs argue that because the Refuge is located within the huge area encompassed by the proclamation boundary, the entire proclamation boundary area *outside* the Refuge "should be considered part of the Refuge for purposes of Section 4(f)." D.E. 20 at 21. This is a fallacy. The fact that the Refuge is located within the proclamation boundary does **not** mean that the proclamation boundary is located within the Refuge. Plaintiffs' argument defies logic and must be rejected.

Plaintiffs also assert that Pamlico Sound should be considered part of the Refuge because "USFWS manages both areas as a single unit." *Id.* In fact, the U.S. Fish and Wildlife Service ("FWS") does **not** manage **any** of the proclamation boundary waters in Pamlico Sound, as wildlife habitat or in any other way. The Comprehensive Conservation Plan (the "Plan") filed by the Plaintiffs explains that "as part of a comprehensive wildlife management program, the Service established Pea Island National Wildlife Refuge to conserve and restore habitat for native wildlife and migratory birds," and, by contrast, notes that the Sound is "not a part of the refuge." D.E. 29-4, at 36, 42. The Plan explains the many ways in which the FWS manages the Refuge, including wildlife habitat management, species monitoring, and maintenance, but it does not include any management of Pamlico Sound. *E.g.*, *id.* at 44. The Plan specifically sets out FWS's responsibilities regarding waterfowl management, and again explains that

these are limited to areas within the Refuge. *Id.* at 51. In short, Plaintiffs' assertion that the Fish and Wildlife Service "manages both areas as a single unit" is not true and this argument also must be rejected.

Finally, Plaintiffs resort to arguing that the restriction on hunting migratory birds in this area of Pamlico Sound created a "*separate* Section 4(f) property" never before identified throughout the administrative process for the Bonner Bridge Project, including Phase IIb. *Id.* (emphasis added). This argument fails as well. Neither the Federal Highway Administration ("FHWA") nor FWS has ever identified the proclamation boundary as any type of Section 4(f) property, and with good reason. This limited hunting ban did not create a wildlife "management area" whose primary purpose is that of a wildlife refuge. There is no wildlife management program associated with the proclamation boundary, contrary to Plaintiffs' unsupported claim that the area is managed by FWS. *Id.* This area is not set aside as public parkland or wildlife habitat, and thus it does not fall within the jurisdiction of Section 4(f). *See* 23 C.F.R. § 774.11(d) (". . . Section 4(f) applies only to . . . lands which function for, or are designated in the plans of the administering agency as being for, significant park, recreation, or wildlife and waterfowl refuge purposes."); *id.* § 774.17 ("Section 4(f) property means publicly owned land of a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance . . . .").

Plaintiffs attempt to use the dictionary definition of the word "refuge" to argue that Pamlico Sound should be subject to Section 4(f) jurisdiction, but that is a red herring. Section 4(f) protects specific categories of public parkland and historic properties, and the relevant term here is not a "refuge" —meaning any generic form of shelter—but rather a "wildlife and waterfowl refuge" that qualifies as the type of parkland Congress intended to protect with Section 4(f). The same FHWA materials cited by Plaintiffs actually explain the meaning of this term, although Plaintiffs conspicuously avoid citing the explanation: "Refuges refer to properties that are formally part of the National Wildlife Refuge System, or other publicly owned land (including waters) where the major purpose of such land is the conservation, restoration, or management of endangered species, their habitat, and other wildlife and waterfowl

7

resources and their habitat."[2] Plaintiffs have cited no materials demonstrating that the "major purpose" of the Pamlico Sound waters is the conservation, restoration, or management of migratory birds. Instead, other than the limitation on migratory waterfowl hunting, these are simply public waters of North Carolina open without limitation to the entire range of commercial and recreational maritime activities. Crucially, Plaintiffs have identified no wildlife management associated with these waters.

In sum, Plaintiffs have failed to plead a concrete and particularized injury sufficient to demonstrate standing for their Section 4(f) claims and have failed to show their claims lie within the "zone of interests." Count II of Plaintiffs' Amended Complaint should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

### B) Plaintiffs' Claims Should be Dismissed Pursuant to 12(b)(1)

Plaintiffs' Rule 12(b)(1) arguments fare no better. Environmental plaintiffs have a responsibility during the administrative process to "structure their participation so that it is meaningful, so that it alerts the agency to the [litigant's] position and contentions." *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.,* 435 U.S. 519, 553 (1978). Save Our Sound's comments to the Transportation Agencies failed to disclose any argument regarding Section 4(f) —but also failed to identify ***any underlying facts or concerns*** that would support a Section 4(f) claim regarding the Refuge.

For this reason, Plaintiffs' reliance on the *South Carolina Wildlife Federation* case is misplaced. In that case, the court held that the plaintiffs' hundreds of pages of comments, documenting concerns about impacts to the Section 4(f) properties affected by the project, provided sufficient notice even though they did not "specifically cite[] to Section 4(f)" by name. *S.C. Wildlife Fed'n v. Limehouse*, 2009 WL 2244210, at *3 (D.S.C. July 27, 2009) (noting that that the plaintiffs' Section 4(f) claims "rely on the same operative facts" as their earlier claims). Here, by contrast, Plaintiffs appear to concede that they submitted no comments raising any concerns about impacts to the Refuge, and instead resort to their unfounded litigation argument that Pamlico Sound should be treated as a Section 4(f) property. The

---
[2] FHWA, Section 4(f) Tutorial, https://www.environment fhwa.dot.gov/section4f/properties.aspx (last visited April 26, 2017).

Transportation Agencies thus lacked any information from which to "discern their position" regarding what Plaintiffs now claim is a violation of Section 4(f). *Id.*

Plaintiffs argue that simply expressing opposition to the selection of a project alternative provides sufficient basis for invoking any statute or legal claim, regardless of whether the agencies were put on notice of the issues underlying such a claim during the administrative process, when they would have been able to incorporate public participation and respond to any such concerns. However, that is not the law. "Ordinarily, courts will not consider objections to administrative actions that were not raised during administrative proceedings." *Id.* (quoting *Appalachian Power Co. v. E.P.A.,* 251 F.3d 1026, 1036 (D.C.Cir.2001)). Where—as is the case here—participants in the administrative process failed to provide any notice to the agencies of a Section 4(f) claim, including any underlying concerns about harm to the Refuge that would support Section 4(f) jurisdiction, or their newly conjured up argument that the Pamlico Sound is a Section 4(f) property, they have denied the agencies the ability to address their concerns during the administrative process. Accordingly, they have no right to pursue such a claim in court.

Plaintiffs also imply that the Conservation Groups bear the burden of proving that Save Our Sound has no valid associational interest under Section 4(f), but the opposite is true. To establish organizational standing, the plaintiff must show that "the interests it seeks to protect are germane to the organization's purpose." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). "An interest is 'germane' to an organization's purpose if it furthers the stated purposes upon which an organization operates." *Int'l Bottled Water Ass'n v. Eco Canteen, Inc.*, 2010 WL 3719313, at *6 (W.D.N.C. Sept. 17, 2010). Here, the Conservation Groups cited examples of public statements by Plaintiffs evincing concern for taxes, property values, and rental property income, in addition to concerns about impacts to Pamlico Sound. To establish standing to bring a Section 4(f) claim, the burden remains on Save Our Sound to demonstrate its organizational interest in the Section 4(f) property at issue, i.e., the Refuge. *E.g.*, *Route 9 Opposition Legal Fund v. Mineta*, 213 F. Supp. 2d 637, 649 (N.D.W. Va. 2002) (no standing where plaintiff organization failed to allege any connection between its activities and transportation route); *Colorado Rail Passenger Ass'n v. Fed. Transit Admin.*, 843 F. Supp. 2d 1150,

1170-71 (D. Colo. 2011) (organization with no focus on historic preservation lacked standing to bring Section 4(f) historic property claims). The important difference between this Section 4(f) property and the surrounding areas, including Pamlico Sound, is not an arbitrary distinction. Rather, it is the fundamental premise of Section 4(f): specific types of public parkland and historic properties can only be protected from transportation projects by shifting those projects onto other adjacent areas that are not subject to Section 4(f). Plaintiffs' arguments would erase this distinction and undermine the statutory purpose of Section 4(f). For all these reasons, Plaintiffs lack both individual and organizational standing and their Section 4(f) claims should be dismissed pursuant to Rule 12(b)(1).

## CONCLUSION

The Conservation Groups respectfully request that the Court dismiss Count I of Plaintiffs' Amended Complaint except as it relates to the sufficiency of the Environmental Assessment for Phase IIb under NEPA and dismiss Count II of Plaintiffs' Amended Complaint.

Respectfully submitted, this 27th day of April.

>
> SOUTHERN ENVIRONMENTAL LAW CENTER
> By: /s/ Kimberley C. Hunter
> Kimberley C. Hunter
>   N.C. State Bar No. 41333
> Derb S. Carter
>   N.C. State Bar No. 10644
> Nicholas S. Torrey
>   N.C. State Bar No. 43382
> 601 West Rosemary Street, Suite 220
> Chapel Hill, NC 27516-2356
> Telephone: (919) 967-1450
> khunter@selcnc.org
> dcarter@selcnc.org
> ntorrey@selcnc.org
> *Attorneys for Defendant-Intervenors*

# CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of April, 2017, I have served the foregoing Reply to Plaintiffs' Memorandum of Law on the parties listed below by electronically filing it with the Clerk of Court on this date using the CM/ECF system, which will send notification of such filing to, and pursuant to Local Civil Rule 5.1(e) shall constitute service upon, the following counsel of record:

| | |
|---|---|
| GIBSON, DUNN & CRUTCHER, LLP<br>Michael K. Murphy<br>D.C. Bar No. 468907<br>Bryson C. Smith<br>D.C. Bar No. 1025120<br>1050 Connecticut Ave., N.W.<br>Washington, D.C. 20036<br>Telephone: (202) 955-8500<br>Facsimile: (202) 530-9657<br>MMurphy@gibsondunn.com<br>BSmith@gibsondunn.com<br>Counsel for Plaintiffs | OATLEY LAW<br>Zia C. Oatley<br>1710 Lake Valley Trail<br>Chapel Hill, N.C. 27517<br>Telephone: (202) 550-3332<br>Facsimile: (202) 530-9657<br>Ziacromer@gmail.com<br>N.C. State Bar No. 44664<br>Local Civil Rule 83.1 Counsel for Plaintiffs |
| Colin Justice, Assistant Attorney General<br>N.C. DEPARTMENT OF JUSTICE<br>Transportation Section<br>1505 Mail Service Center<br>Raleigh, N.C. 27699-1505<br>Telephone: (919) 707-4480<br>Facsimile: (919) 733-9329<br>cjustice@ncdoj.gov<br>N.C. State Bar No. 42965<br>Counsel for State Defendants | John G. Batherson<br>N.C. DEPARTMENT OF JUSTICE<br>Transportation Section<br>1505 Mail Service Center<br>Raleigh, N.C. 27699-1505<br>Telephone: (919) 707-4480<br>Facsimile: (919) 715-3870<br>jbatherson@ncdoj.gov<br>N.C. State Bar No. 48985<br>Counsel for State Defendants |
| Carter F. Thurman<br>U.S. DEPARTMENT OF JUSTICE<br>Environment and Natural Resources Division<br>P.O. Box 7611<br>Washington, D.C. 20044-7611<br>Telephone: (202) 305-0444<br>Facsimile: (202) 305-0506<br>Carter.Thurman@usdoj.gov<br>G.A. State Bar No. 691275<br>Counsel for Federal Defendants | |

/s/ Kimberley C. Hunter_____
Kimberley C. Hunter
*Attorney for Defendant-Intervenors*