IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:17-CV-4-FL

| | | |
|---|---|---|
| SAVE OUR SOUND, OBX, INC., THOMAS ASCHMONEIT, RICHARD AYELLA, DAVID HADLEY, MARK HAINES, JER MEHTA, and GLENN STEVENS | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, JAMES H. TROGDON, III, in his official capacity as Secretary of the North Carolina Department of Transportation, FEDERAL HIGHWAY ADMINISTRATION, and JOHN F. SULLIVAN, III, in his official capacity as Division Administrator for the Federal Highway Administration, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants, and | ) ) ) | |
| DEFENDERS OF WILDLIFE and NATIONAL WILDLIFE REFUGE ASSOCIATION, | ) ) ) ) | |
| Intervenor-Defendants. | ) | |

This matter is before the court upon plaintiffs' motion to compel completion of the administrative record, or, in the alternative, production of extra-record evidence. (DE 60). The motion has been fully briefed, and the issues presented are ripe for ruling. For the reasons that follow, the motion is denied.

**DISCUSSION**

The court proceeds immediately to discussion of the issues where the case background is a matter of record.[1] Plaintiffs move to compel completion the administrative record by adding "all non-privileged documents regarding settlement negotiations between [d]efendants and [d]efendant-[i]ntervenors in Defenders of Wildlife v. North Carolina Department of Transportation, No. 2:11-CV-35 (E.D.N.C.), to which [d]efendant Federal Highway Administration ("FHWA") was a party or that were in FHWA's possession prior to April 30, 2015[]" ("the disputed materials"). (DE 60). In the alternative, plaintiffs move to compel production of the disputed materials so that plaintiffs may present them as extra-record evidence. The court addresses each request in turn.

A.   Supplementation of the Administrative Record

In reviewing agency action pursuant to the Administrative Procedure Act ("APA"), "the court shall review the whole record." 5 U.S.C. § 706. "Judicial review of administrative action is generally confined to the administrative record." Fort Sumter Tours, Inc. v. Babbit, 66 F.3d 1324, 1335 (4th Cir. 1995). Further, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Fayetteville Area Chamber of Commerce v. Volpe, 515 F.2d 1021, 1024 (4th Cir. 1975) (internal quotations omitted); see Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993) ("The court assumes the agency properly designated the [a]dministrative [r]ecord absent clear evidence to the contrary."). Although the APA does not expressly define what constitutes the "whole record . . . review is to be based on the full administrative record that was before the [decisionmaker] at the time he made his

---

[1] The court incorporates herein by reference "Statement of the Case" set forth in memorandum opinion entered September 5, 2017. (DE 66).

decision." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971).

Plaintiffs have not demonstrated that defendants considered any document not already included in the administrative record in reaching decision to approve the jug-handle bridge. In particular, plaintiffs acknowledge that the administrative record includes the settlement agreement which led to the conclusion of Defenders of Wildlife. No. 2:11-CV-35. Inclusion of that document constitutes acknowledgment that defendants considered the prior settlement in selecting the jug-handle bridge alternative here. See Overton Park, 401 U.S. at 420. However, there is no evidence before the court that, in addition to review of the settlement itself, defendants also reviewed the disputed materials. Accordingly, where plaintiffs have proffered no evidence to impugn the declaration of Ronald G. Lucas, certifying the administrative record on behalf of defendant FHWA, (DE 59-1), and affirming that no additional documents, such as settlement drafts or settlement-related communications, were considered in reaching the decision now under review, plaintiffs' request to include the disputed materials as part of the administrative record is denied. See Overton Park, 401 U.S. at 420.

Plaintiffs suggest that defendants indeed considered the disputed materials in the decision-making process now under review, noting that even if the settlement agreement constitutes the final memorialization of negotiations that preceded it, this fact does not rule out the possibility that defendants nonetheless considered draft documents, too. Similarly, plaintiffs argue it is "quite plausible" that the disputed materials reveal additional understandings not reflected in the final settlement agreement. (DE 61 at 13). Finally, plaintiffs protest that where the settlement negotiations were conducted out of public view, the court may infer that defendants intend to selectively exclude from the administrative record unfavorable information. These arguments fail

3

because they rest upon speculation. That is, plaintiffs' assertion that there <u>might</u> exist certain evidence of illicit considerations entering the decision-making process does not undermine defendant FHWA's certification that it included in the administrative record all documents considered in reaching decision to approve the jug-handle bridge. (<u>See</u> DE 59-1).

Based upon the foregoing, plaintiffs' request to include the disputed materials as part of the administrative record is denied. The court turns to plaintiffs' alternative argument below.

B.  Extra-Record Evidence

"While review of an agency decision is usually confined to [the administrative] record, there may be circumstances to justify expanding the record or permitting discovery." <u>Nat. Audubon Soc. v. Dep't. of Navy</u>, 422 F.3d 174, 188 n.4 (4th Cir. 2005). When "there [is] such a failure to explain administrative action as to frustrate effective review" the court may "obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary." <u>Camp v. Pitts</u>, 411 U.S. 138, 142–43 (1973). However, where the agency proffers a contemporaneous explanation of the agency decision, "there must be a strong showing of bad faith or improper behavior before [an inquiry into the mental processes of administrative decisionmakers] may be made." <u>Overton Park</u>, 401 U.S. at 420; <u>see</u> <u>Prof'l. Massage Training Ctr., Inc. v. Accreditation All. of Career School and Colleges</u>, 781 F.3d 161, 178 (4th Cir. 2015) (holding that agency staff's hostility toward applicant for educational accreditation was insufficient evidence of bias to justify "a more searching inquiry in the motivations of administrative decisionmakers[.]"); <u>United States v. Shaffer Equip. Co.</u>, 11 F.3d 450, 460 (4th Cir. 1993) (finding bad faith where agency investigator filed fraudulent documents and perjured himself in connection with statements of his credentials, rendering unreliable a portion of the administrative record of unknown scope.).

Plaintiffs do not dispute that defendants have proffered a contemporaneous explanation of their decision to select the jug-handle bridge alternative; therefore, this case is not controlled by the holding of Camp that extra-record evidence may be received where there is "such a failure to explain administrative action as to frustrate effective judicial review[.]" 411 U.S. at 142–43. Rather, plaintiffs argue that defendants' settlement of Defenders of Wildlife indicates bad faith where it makes defendant-intervenors' abandonment of that action contingent upon selection of the jug-handle bridge alternative in the decision now under review.

This argument is unavailing because it, too, rests upon conjecture. That is, unlike the pattern in Shaffer, where a government investigator's perjury surrounding his qualifications cast doubt upon the veracity of a significant portion of the administrative record, plaintiffs' misgivings about defendants' motives arise from inference that, following settlement in Defenders of Wildlife, defendants thereafter adopted compliance with settlement as their sole motivating force, abandoned adherence to all inconsistent regulatory requirements, and approved the jug-handle bridge in spite of such requirements. This inference is not compelled by the evidence, and is indeed undermined by the fact that the settlement agreement contemplates the possibility that defendants may find the jug-handle bridge unacceptable under law, upon which determination defendant-intervenors would be permitted to file a new challenge to the bridge at issue in Defenders of Wildlife. (See DE 1-1 ¶ 2b–2d (defendant-intervenors' covenants not to sue contingent upon selection of the jug-handle bridge alternative)). Based upon these observations, plaintiffs have not met their burden to demonstrate a "strong showing of bad faith or improper behavior" to justify any consideration of extra-record evidence. See Overton Park, 401 U.S. at 420.

Plaintiffs argue that the disputed materials would "provide color" to defendants' rationale

for approving the jug-handle bridge and will "likely reveal" that defendants ignored relevant legal standards in deciding to approve the jug-handle bridge. (DE 61 at 17). These arguments fail because, as described above, they are grounded in speculation about defendants' motives rather than any concrete evidence that defendants abandoned their duty to assess environmental impacts of the jug-handle bridge project. Therefore, plaintiffs have made no "strong showing of bad faith or improper behavior" justifying consideration of extra-record evidence. See Overton Park, 401 U.S. at 420.

For the foregoing reasons, plaintiffs' motion to compel production of the disputed materials as extra-record evidence is denied.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel completion of the administrative record, or, in the alternative, production of extra-record evidence, (DE 60), is DENIED. Pursuant to section 1(h) of this court's order entered June 21, 2017, (DE 58), the parties are DIRECTED to submit a revised proposed briefing schedule for summary judgment within 10 days hereof.

SO ORDERED, this the 20th day of October, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge